**No. 25-50567**

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

ROGELIO CARLOS, III
*Plaintiff - Appellee/Cross-Appellant*

v.

CARLOS CHAVEZ; JOHN DOE, DETECTIVE,
*Defendants - Appellants/Cross-Appellees*

VIRGILIO GONZALEZ; JAMES YBARRA; MARK DELGADO; CITY OF SAN ANTONIO; SAN ANTONIO POLICE DEPARTMENT; WILLIAM VANNESS,
*Defendants - Appellees*

---

**On Appeal from**
United States District Court for the Western District of Texas

5:16-CV-251

---

**BRIEF OF APPELLANTS CARLOS CHAVEZ AND JOHN DOE, DETECTIVE**

---

DENTON NAVARRO RODRIGUEZ
BERNAL SANTEE & ZECH
Clarissa M. Rodriguez
Patrick C. Bernal
Lowell F. Denton
Lori W. Hanson
2517 N. Main Avenue
San Antonio, Texas 78212
(210) 581-5599
cmrodriguez@rampagelaw.com
pbernal@rampagelaw.com
lfdenton@rampagelaw.com
lwhanson@rampagelaw.com

HOUSTON DUNN, PLLC
Nissa M. Dunn
4040 Broadway St., Suite 515
San Antonio, Texas 78209
(210) 775-0881
nissa@hdappeals.com

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiff/Appellee/Cross-Appellant**

Rogelio Carlos III

**Counsel for Plaintiff/Appellee/Cross-Appellant**

Thad Spalding
Kirk Pittard
Shelby White
DURHAM, PITTARD & SPALDING

Daniel Kustoff
Melanie Sanders
Taylor Lynn Crull
KUSTOFF & PHIPPS, L.L.P.

Philip G. Bernal
Elizabeth Janicek
JANICEK LAW

Brian C. Steward
THE LAW OFFICE OF BRIAN C. STEWARD, P.L.L.C

**Defendants/Appellants/Cross-Appellees:**

Carlos Chavez
John Doe

**Counsel for Defendants/Appellants/Cross-Appellees:**

Clarissa M. Rodriguez
Patrick C. Bernal

Lowell F. Denton
Lori W. Hanson
DENTON NAVARRO RODRIGUEZ BERNAL SANTEE & ZECH

Nissa M. Dunn
Samuel V. Houston III
HOUSTON DUNN, PLLC

Charles S. Frigerio (former counsel)
LAW OFFICES OF CHARLES S. FRIGERIO, P.C.

N. Mark Ralls (former counsel)
HOBLIT DARLING RALLS HERNANDEZ & HUDLOW, L.L.P.

**Defendant/Cross-Appellee:**

City of San Antonio/San Antonio Police Department

**Counsel for Defendant/Cross-Appellee:**

Jacqueline Stroh
LAW OFFICE OF JACQUELINE M. STROH, P.C.

Mark Kosanovich
FITZPATRICK & KOSANOVICH, P.C.

**Other Parties and Counsel in the District Court:**

Myrna Carlos (Plaintiff—voluntarily dismissed—represented by the same counsel as Plaintiff Rogelio Carlos III)

Virgilio Gonzalez (Defendant represented by Clarissa M. Rodriguez, Patrick C. Bernal, Lowell F. Denton, Robert Drinkard, and Lori W. Hanson of DENTON NAVARRO RODRIGUEZ BERNAL SANTEE & ZECH; Nissa M. Dunn and Samuel V. Houston III of HOUSTON DUNN, P.L.L.C.; N. Mark Ralls of HOBLIT DARLING RALLS HERNANDEZ & HUDLOW, L.L.P.; Charles S. Frigerio, LAW OFFICES OF CHARLES S. FRIGERIO, P.C.)

Mark Delgado (Defendant represented by Mark Kosanovich of FITZPATRICK & KOSANOVICH, P.C.; and Harrison Fisher of CLARK HILL STRASBURGER)

James Ybarra (Defendant represented by Mark Kosanovich of FITZPATRICK & KOSANOVICH, P.C.; Harrison Fisher of CLARK HILL STRASBURGER)

William VanNess (Defendant—dismissed and severed—represented by Laura Macom of LANGLEY & BANACK, INCORPORATED)

National Neuromonitoring Services, L.L.C.; Neurodiagnostics and Neuromonitoring Inst., Inc.; South Texas Neuromonitoring; and Maribel Gomez (Defendants—voluntarily dismissed—represented by Lisa A. Rocheleau and John A. Fuentes of BOONE, ROCHELEAU & RODRIGUEZ, P.L.L.C.)

*/s/ Nissa M. Dunn*
Attorney of Record for Appellants
Carlos Chavez and John Doe

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument should be allowed in this case because the record is voluminous and the issues fact intensive. Argument of counsel would significantly aid the decisional process. Fed. R. App. P. 34(a); 5th Cir. R. 28.2.3.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................ ii

STATEMENT REGARDING ORAL ARGUMENT ........................................ v

TABLE OF CONTENTS ........................................ vi

TABLE OF AUTHORITIES ........................................ viii

JURISDICTIONAL STATEMENT ........................................ 1

STATEMENT OF THE ISSUES ........................................ 1

STATEMENT OF THE CASE ........................................ 2

I. Factual Background ........................................ 2

II. Procedural Background ........................................ 6

SUMMARY OF THE ARGUMENT ........................................ 8

ARGUMENT ........................................ 10

I. The Officers are entitled to qualified immunity because Carlos failed to demonstrate that their conduct violated clearly established law. ........................................ 10

*A. Under § 1983, the Court measures the force used under the facts as a reasonable officer would perceive them.* ........................................ 11

*B. Carlos' undisputed conduct established that the Officers could reasonably believe he was verbally and physically resisting arrest.* ........................................ 14

*C. Clearly established law entitled the Officers to use "measured and ascending" actions in response to Carlos' resistance.* ........................................ 21

*D. Carlos failed to cite relevant precedent placing the Officers' purported Constitutional violation beyond debate.* ........................................ 23

II. The district court, based on the jury's verdict, awarded excessive damages for past pain and suffering and past and future mental anguish. ....................30

*A. Past pain and suffering* ....................35

*B. Past Mental Anguish*....................39

*C. Future Mental Anguish*.................... 41

III. The district court abused its discretion in awarding prejudgment interest on intangible damages.....................43

CONCLUSION ....................46

CERTIFICATE OF SERVICE....................48

CERTIFICATE OF COMPLIANCE....................48

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ........ 12, 13

*Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*,
75 F.3d 1048 (5th Cir. 1996) ........ 44

*Blackburn v. Snow*,
771 F.2d 556 (1st Cir. 1985) ........ 45

*Brady v. Fort Bend Cnty.*,
145 F.3d 691 (5th Cir. 1998) ........ 42

*Brosseau v. Haugen*,
543 U.S. 194 (2004) (per curiam) ........ 13

*Caldarera v. E. Airlines, Inc.*,
705 F.2d 778 (5th Cir. 1983) ........ 33

*Carey v. Piphus*,
435 U.S. 247 (1978) ........ 34, 39, 42

*Carroll v. Ellington*,
800 F.3d 154 (5th Cir. 2015), *cert. denied*, 580 U.S. 998 (2016) ........ 23, 25

*Carter v. Transp. Workers Union of Am.*,
644 F.Supp.3d 315 (N.D. Tex. 2022) ........ 44

*Chacon v. Copeland*,
103 F.Supp.3d 827 (W.D. Tex. 2015) ........ 38, 42

*Darden v. City of Fort Worth, Tex.*,
880 F.3d 722 (5th Cir. 2018) ........ 23

*DeCorte v. Jordan*,
497 F.3d 433 (5th Cir. 2007) ........ 34, 42

*Escobar v. Montee*,
895 F.3d 387 (5th Cir. 2018) ........ 29

*Galvan v. City of San Antonio*,
435 Fed. App'x. 309 (5th Cir. 2010) ........................................................ 21

*Gasperini v. Ctr. for Humanities, Inc.*,
518 U.S. 415 (1996) ........................................................................ 33

*Graham v. Connor*,
490 U.S. 386 (1989) ........................................................... 11, 20, 30

*Griggs v. Brewer*,
841 F.3d 308 (5th Cir. 2016) ............................................................ 12, 14

*Hale v. Fish*,
899 F.2d 390 (5th Cir. 1990) ........................................................... 44, 45

*Harris v. FedEx Corp. Servs., Inc.*,
92 F.4th 286 (5th Cir. 2024), *cert. denied*, 145 S.Ct. 168 (2024) ............ 34

*Herrera v. Aguilar*,
No. SA-10-CV-00569-DAE, 2013 WL 5354518
(W.D. Tex. Sept. 24, 2013) .................................................................. 20

*Hinshaw v. Doffer*,
785 F.2d 1260 (5th Cir. 1986), *overruled in part on other grounds*,
*Johnson v. Morel*, 876 F.2d 477 (5th Cir. 1989) ...................................... 37

*International Ins. v. RSR Corp.*,
426 F.3d 281 (5th Cir. 2005) .............................................................. 33

*Jimerson v. Lewis*,
94 F.4th 423 (5th Cir. 2024) ................................................................ 13

*Joseph, on behalf of the Estate of Joseph v. Bartlett*,
981 F.3d 319 (5th Cir. 2020) ............................................................ 12, 13

*Keyes v. Lauga*,
635 F.2d 330 (5th Cir. 1981), .............................................................. 37

*Kisela v. Hughes*,
584 U.S. 100 (2018) .......................................................................... 23

*Lebron v. U.S.*,
279 F.3d 321 (5th Cir. 2002) ............................................................... 34

*Longoria v. Hunter Express, Ltd.*,
932 F.3d 364 (5th Cir. 2019) .................................................. 33, 34, 35, 40

*Mieco L.L.C. v. Targa Gas Mktg, L.L.C.*,
161 F.4th 828 (5th Cir. 2025) .................................................. 10

*Miniex v. Hous. Housing Auth.*,
400 F.Supp.3d 620 (S.D. Tex. 2019) .................................................. 34, 40, 42

*Mullenix v. Luna*,
577 U.S. 7 (2015) .................................................. 13, 14

*Naquin v. Elevating Boats, L.L.C.*,
744 F.3d 927 (5th Cir. 2014) .................................................. 33

*Parson v. Kaiser Aluminum & Chem. Corp.*,
727 F.2d 473 (5th Cir. 1984) .................................................. 44

*Plumhoff v. Rickard*,
572 U.S. 765 (2014) .................................................. 12

*Poole v. City of Shreveport*,
691 F.3d 624 (5th Cir. 2012) .................................................. 21

*Pressey v. Patterson*,
898 F.2d 1018 (5th Cir. 1990) .................................................. 43

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) .................................................. 11

*Rivas-Villegas v. Cortesluna*,
595 U.S. 1 (2021) .................................................. 12

*Rodrigue v. Morehouse Detention Ctr.*,
No. 09-985, 2014 WL 2879751 (W.D. La. June 23, 2014) .................................................. 45

*Salazar v. Molina*,
37 F.4th 278 (5th Cir. 2022) .................................................. 28, 29

*Sam v Richard*,
887 F.3d 710 (5th Cir. 2018) .................................................. 23

*San Jacinto Sav. v. Kacal*,
No. 92-1833, 1993 WL 455886 (5th Cir. Oct. 27, 1993) (unpublished) ... 44

*Saucier v. Katz*,
533 U.S. 194 (2001) .......... 14

*Sawyer v. Hickey*,
68 F.3d 472 (5th Cir. Sept. 27, 1995) (unpublished) .......... 45

*Shepherd v. Dall. Cnty., Tex.*,
No. 3:05-CV-1442-D, 2008 WL 3931164 (N.D. Tex. Aug. 26, 2008) .......... 45

*Smith v. City of Seven Points, Tex.*,
608 F.Supp. 458 (E.D. Tex. 1985) .......... 38

*Smith v. Transworld Drilling Co.*,
773 F.2d 610 (5th Cir. 1985) .......... 33

*Spiller v. Harris Cnty., Tex.*,
113 F.4th 573 (5th Cir. 2024) .......... 23

*Thomas v. Texas Dep't of Crim. Just.*,
297 F.3d 361 (5th Cir. 2002) .......... 33, 40, 41, 44

*Tompkins v. Cyr*,
202 F.3d 770 (5th Cir. 2000) .......... 10

*Tucker v. City of Shreveport*,
998 F.3d 165 (5th Cir. 2021),
*cert. denied*, 142 S.Ct. 419 (2021). .......... passim

*Tucker v. City of Shreveport*,
No. 17-1485, 2019 WL 961993
(W.D. La. Feb. 27, 2019) .......... 24

*U.S. v. Ocean Bulk Ships, Inc.*,
248 F.3d 331 (5th Cir. 2001) .......... 44

*Wesley v. Yellow Transp. Inc.*,
Nos. 3:05-CV-2266-D, 3:05-CV-2271-D, 2010 WL 3606095
(N.D. Tex. Sept. 16, 2010) .......... 44

*White v. Pauly*,
580 U.S. 73 (2017) .......... 30

**Statutes**

28 U.S.C. § 1291 .......... 1, 43

42 U.S.C. § 1983 .......... passim

**Rules**

5th Cir. R. 28.2.1 .......... ii

5th Cir. R. 28.2.3 .......... v

Fed. R. App. P. 34(a) .......... v

Fed. R. Civ. P. 50(a)(1) .......... 11

Fed. R. Civ. P. 59 .......... 33

## JURISDICTIONAL STATEMENT

The Court has jurisdiction of this appeal under 28 U.S.C. § 1291. The district court signed a Final Judgment on January 28, 2025. ROA.10835. Appellants/Defendants Carlos Chavez and Detective John Doe and Plaintiff Rogelio Carlos III filed post-judgment motions, which the district court disposed of in an Opinion and Order on Post Judgment Motions signed June 13, 2025. ROA.11195. Chavez and Doe timely appealed by filing their Notice of Appeal on July 11, 2025—within 30 days of the district court's June 13, 2025 order. ROA.11201.

## STATEMENT OF THE ISSUES

1. For purposes of qualified immunity, did Carlos identify clearly established law prohibiting the force the Officers used to arrest a person they reasonably believed was a wanted felon with an outstanding warrant, had engaged police in a high-speed chase, and although he was no longer fleeing, continued to verbally and physically resist arrest?

2. Did the district court abuse its discretion in refusing to order remittitur where damages awarded for past pain and suffering, past mental anguish, and future mental anguish are unsupported by the evidence, disproportionate to the injury sustained, and violate the maximum recovery rule?

3. Did the district court abuse its discretion in awarding prejudgment interest on $4,020,000 in intangible damages where this Court has held it is improper to award prejudgment interest on intangible losses in § 1983 actions?

## STATEMENT OF THE CASE

This lawsuit arises from Detective John Doe, Carlos Chavez, and Virgilio Gonzalez's mistaken arrest of Rogelio Carlos III. On appeal, Doe and Chavez[1] challenge: (1) the district court's denial of their motion for judgment as a matter of law on qualified immunity; (2) the excessiveness of damages awarded for physical pain and suffering and mental anguish; and (3) the propriety of awarding prejudgment interest on intangible damages. The factual and procedural background relevant to Doe and Chavez's (collectively referred to as "the Officers") appeal are set out below.[2]

## I. Factual Background

The facts leading to the initial encounter with Carlos are largely undisputed. On May 20, 2014, the police had a valid arrest warrant for a man named Josue Gonzalez-Rodriguez who they wanted to apprehend for a felony assault/family-violence charge. ROA.9403. Doe—a High Intensity

---

[1] The jury vindicated Gonzalez, finding that he did not use excessive force in violation of Carlos's Constitutional rights. ROA.9410.

[2] As the district court noted in its judgment, Carlos sued numerous other defendants who were dismissed either voluntarily or on motion for summary judgment. ROA.10834.

Drug Trafficking Area (HIDTA) task force detective who was wearing plain clothes and driving an unmarked truck—contacted Officer James Ybarra for assistance in apprehending Gonzalez-Rodriguez. ROA.11664. When Ybarra tried to make a traffic stop, Gonzalez-Rodriguez led Ybarra on a vehicle chase ending in a restaurant parking lot where Gonzalez-Rodriguez abandoned his vehicle and fled on foot. ROA.11670-11672. At that point, Ybarra broadcasted a description that Gonzalez-Rodriguez was wearing a white T-shirt and blue jeans. ROA.11672.

Along with Doe, Chavez and Gonzalez—both members of the San Antonio Police Department's SWAT team—also participated in the pursuit of Gonzalez-Rodriguez. ROA.11720-11721, 11781-11782, 11815. They knew Gonzalez-Rodriguez had an outstanding felony arrest warrant and a history of violence. ROA.9404, 11615, 11691, 11781, 11830. They were also aware that he had evaded Officer Ybarra in a vehicle and on foot. ROA.9404, 12263, 12318-12319, 12393. Searching for Gonzalez-Rodriguez, Doe spotted Carlos wearing white over blue standing in a wooded area next to a construction site in the general vicinity of the restaurant where Ybarra had last seen Gonzalez-Rodriguez. ROA.11729-11730. Believing that Carlos matched Gonzalez-Rodriguez's description, Doe approached Carlos. ROA.11735-11736.

What happened next is disputed, but because the applicable standard of review requires the Court to draw all reasonable inferences in Carlos' favor, his version of the facts take precedence. According to Carlos, Doe drove his truck towards him at a high rate of speed, slammed on the brakes, and jumped out of the truck, saying "get on the ground." ROA.11568-11570. After Doe told him to "get on the ground" a second time, Carlos began crouching down towards the ground but turned to the left as he again heard "get on the ground" from a second source. ROA.11572. As Carlos turned back toward Doe, he claimed Doe hit him across the head with an object of some kind. ROA.11572.

At that point, Carlos claims he went to the ground and Doe, Chavez, and Gonzalez began hitting him "over and over," repeatedly asking "where's the gun?" ROA.11573. Carlos says he protested, saying: "I don't have a gun. This is my property." ROA.11573. According to Carlos, Gonzalez put his right knee on Carlos' head, "pushing his weight down, almost like jumping on my head" as Carlos continued to insist that he owned the property. ROA.11576-11577. He also claims that Chavez kicked him in the face and that Doe elbowed him in the face. ROA.11585, 11618.

What is undisputed is that the Officers had no further physical contact once Carlos offered his hands to be cuffed. Carlos testified that when

Gonzalez "got off his head," he offered his arms behind his back and said: "Just cuff me. Just cuff me. But stop hitting me." ROA.11577-11578. At that point, Gonzalez handcuffed Carlos. ROA.11796, 11838. After handcuffing Carlos, the Officers learned that Gonzalez-Rodriguez had been apprehended, and at that point, realized their mistake and released Carlos. ROA.11837-11838. Carlos conceded that once he was handcuffed, all use of force against him stopped. ROA.11620. Approximately 42 seconds elapsed from the time Doe radioed that he saw the suspect until he observed Carlos in handcuffs, and Carlos was released within less than six minutes of Doe's radio communication. ROA.12286, 12333.

As a result of the Officers' conduct, Carlos broke a tooth and sustained lacerations, abrasions, contusions, and swelling to his face. ROA.12943, 13422, 25509. Carlos declined EMS transportation to the hospital but instead drove himself to Christus Santa Rosa. ROA.12945-12946, 13428. Santa Rosa staff closed the gash above Carlos' eye with Dermabond, performed x-rays of his head and face, prescribed hydrocodone for pain, and recommended that Carlos follow up with his primary care physician. ROA 12949-12950. Carlos did so on May 23, 2014, and was released to return to work without restrictions that day. ROA.13880.

Despite his wounds healing after the incident, Carlos continued to complain of neck pain and headaches (but continued to work). ROA.13604, 13905. An MRI performed July 29, 2014, indicated that Carlos suffered from degenerative disk disease. ROA.25650-25651. In April 2015, Carlos also reported numbness in his left palm. ROA.12966, 13136. Dr. Adam Bruggeman recommended surgery—a C5 to C7 cervical fusion—which Bruggeman performed on November 3, 2015. ROA.12972, 13168. During surgery, Carlos' C7 vertebra fractured and a bone fragment from the fracture compressed his spinal cord, causing tetraplegia. ROA.13183-13185, 13260-13261.

## II. Procedural Background

Carlos sued the City of San Antonio and numerous San Antonio Police Department officers (including Chavez and Doe) claiming that the May 20, 2014 incident caused his paralysis. ROA.84, 506. Except for his excessive force claim under 42 U.S.C. § 1983 against Chavez, Doe, and Gonzalez, all Carlos' claims were dismissed either voluntarily or on motion for summary judgment. ROA.10834. The district court, on its own motion, bifurcated the liability and damages phases of the trial. ROA.10834.

In the liability phase, the jury returned a verdict in favor of Carlos against Chavez and Doe, finding that both Officers used excessive force and

were not entitled to qualified immunity. ROA.9410-9411. The jury exonerated Officer Gonzalez. *Id.* Following the liability verdict, but before the damages phase, Chavez and Doe filed a Renewed Motion for Judgment as a Matter of Law on Qualified Immunity, which the district court denied. ROA.12654.

In the damages phase, Carlos contended that the cervical fusion "was necessitated by the event of May 20, 2014." ROA.10798. The Officers, on the other hand, claimed the surgery was required because of a degenerative spinal condition unrelated to the 2014 incident. ROA.10798. The jury assessed damages indicating it agreed with the Officers, finding modest damages for past medical, lost earning capacity, disfigurement, and impairment, but no future damages except for future mental anguish:

| | |
|---|---:|
| Past physical pain: | $2,000,000.00 |
| Future physical pain: | 0.00 |
| Past mental anguish: | 2,000,000.00 |
| Future mental anguish: | 3,000,000.00 |
| Past lost earning capacity: | 20,000.00 |
| Future lost earning capacity: | 0.00 |
| Past disfigurement: | 10,000.00 |
| Future disfigurement: | 0.00 |
| Past physical impairment: | 10,000.00 |
| Future physical impairment: | 0.00 |
| Past medical care expenses: | 10,000.00 |
| Future medical expenses: | 0.00 |

ROA.10788-10790. Based on the jury's verdict, the district court entered a Final Judgment awarding Carlos $7,050.000.00 in compensatory damages,

$2,489,757 in prejudgment interest, and post-judgment interest at the rate of 4.19% per annum. ROA.10835.

Both Carlos and the Officers filed post-judgment motions challenging the Final Judgment, and Carlos also filed agreed motions for attorneys' fees and costs. ROA.10844, 10860, 10923, 10932. In an Opinion and Order on Post Judgment Motions, the district court: (1) denied the Officers' Motion for New Trial and Remittitur and Requests to Reconsider Defendants' Renewed Motion for Judgment on Qualified Immunity and Motion to Amend Final Judgment under Rule 54(b); (2) denied Carlos' Motion to Alter or Amend Judgment; and (3) granted Carlos' Agreed Motion for Attorneys' Fees and Agreed Motion for Costs, awarding him $1,468,150.77 in attorney's fees and approving his bill of costs in the amount of $68,659.21. ROA.11195-11199. Chavez and Doe timely filed a Notice of Appeal and Carlos subsequently filed a Cross-Notice of Appeal. ROA.11201, 11206.

## Summary of the Argument

### I. The Officers are entitled to qualified immunity.

Carlos' claims against the Officers should be dismissed because their conduct did not violate clearly established law. Viewing the evidence in the light most favorable to Carlos, the Officers were faced with a suspect they reasonably believed was armed and dangerous, had led police on a high-

speed chase, fled on foot, and when Doe intercepted him, refused to obey commands to get on the ground and show his hands but continued to verbally and physically resist. The Officers used no force after Carlos stopped resisting efforts to place him in handcuffs. Considering these circumstances, Carlos failed to identify clearly established law at the time of the incident demonstrating that no reasonable officer could have believed that the force Chavez and Doe used on Carlos was lawful.

## II. The district court awarded excessive damages.

Based on the jury's verdict, the district court awarded $7,050,000, of which $7,000,000 was for past physical pain, past mental anguish, and future mental anguish. The remaining $50,000 damages represented past damages for medical care, impairment, disfigurement, and earning capacity, indicating that the jury determined that the Officers' conduct did not cause Carlos' paralysis. The damages awarded for past physical pain, past mental anguish, and future mental anguish are unsupported by the evidence, entirely disproportionate to injury sustained, and violate the maximum recovery rule. Thus, if this Court does not dismiss the case based on qualified immunity, it should conditionally grant a substantial remittitur or remand the case to the trial court to make that determination.

### III. Carlos is not entitled to prejudgment interest on intangible damages.

Over the Officers' objection, the district court awarded $2,489,757.39 in prejudgment interest on all damages awarded, including intangible losses. This Court has indicated that awards of prejudgment interest on intangible losses are improper. Therefore, if the Court does not dismiss the case based on qualified immunity, nor remit the excessive damages awarded, the judgment should be amended to exclude prejudgment interest on Carlos' intangible losses.

## ARGUMENT

### I. The Officers are entitled to qualified immunity because Carlos failed to demonstrate that their conduct violated clearly established law.

During the liability phase of trial, the Officers moved for judgment as a matter of law based on qualified immunity. ROA.12022. The Officers renewed that motion twice. ROA.10252, 10891. The district court erroneously denied the Officers' motion.

This Court reviews denial of a motion for judgment as a matter of law *de novo* applying the same legal standard as the trial court. *Mieco L.L.C. v. Targa Gas Mktg, L.L.C.*, 161 F.4th 828, 844 (5th Cir. 2025); *Tompkins v. Cyr*, 202 F.3d 770, 782 (5th Cir. 2000). Judgment as a matter of law is appropriate if the Court "finds that a reasonable jury would not have a legally

sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). In making that determination, the Court reviews all the evidence in the record, drawing "all reasonable inferences in favor of the nonmoving party" and "disregard[ing] all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). As discussed below, uncontroverted evidence demonstrates that the Officers are entitled to qualified immunity as a matter of law because from the Officers' perspective, Carlos' verbal and physical resistance entitled them to use force to effectuate the arrest and Carlos failed to sustain his burden that the force either Defendant used violated clearly established law.

*A. Under § 1983, the Court measures the force used under the facts as a reasonable officer would perceive them.*

For purposes of liability under 42 U.S.C. § 1983, excessive force claims arising from an arrest invoke the Fourth Amendment's protection against "unreasonable seizure." *Tucker v. City of Shreveport*, 998 F.3d 165, 171 (5th Cir. 2021), *cert. denied*, 142 S.Ct. 419 (2021). Fourth Amendment jurisprudence, however, has long recognized that the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Although the Court must construe disputed facts in the non-movant's favor,

evaluating the reasonableness of an officer's use of force requires consideration of how a reasonable officer would have perceived those facts. *Tucker*, 998 F.3d at 171-72 (citing *Griggs v. Brewer*, 841 F.3d 308, 313-14 (5th Cir. 2016) ("Although . . . a reasonable jury might find that [the plaintiff] was not *actually* resisting arrest, that is not the proper inquiry in this appeal. A court must measure the force used under the facts as a reasonable officer *would perceive them*, not necessarily against the historical facts.") (emphasis in original)).

The doctrine of qualified immunity protects public officials from liability for damages under § 1983 unless their conduct violates a clearly established Constitutional right of which a reasonable person would have known. *Rivas-Villegas v. Cortesluna,* 595 U.S. 1, 5 (2021). For a court to deny qualified immunity based on "clearly established" law, "existing precedent must have placed the statutory or constitutional question beyond debate." *Joseph, on behalf of the Estate of Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020). *See also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Tucker*, 998 F.3d at 172 (quoting *Plumhoff v. Rickard,* 572 U.S. 765, 778-79 (2014)).

In other words, existing precedent must squarely govern the specific facts at issue such that only someone who is plainly incompetent or who knowingly violates the law would have behaved as the officer did. *Joseph*, 981 F.3d at 337. *See also Tucker*, 998 F.3d at 174 (qualified immunity is justified unless *no* reasonable officer could have acted as the defendant officers did, or *every* reasonable officer faced with the same facts would *not* have acted as the defendant officer did).

Although nominally an affirmative defense, the plaintiff has the burden to negate qualified immunity once it is properly raised. *Jimerson v. Lewis,* 94 F.4th 423, 428 (5th Cir. 2024); *Tucker*, 988 F.3d at 173; *Joseph*, 981 F.3d at 329. This requires the plaintiff to identify a case—usually a body of relevant case law—in which an officer acting in similar circumstances was held to have violated the Constitution. *Joseph*, 981 F.3d at 330.

The Supreme Court has repeatedly admonished courts not to define clearly established law at a high level of generality. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 742). The dispositive question is whether the *particular* conduct violates clearly established law in light of the specific context of the case, not as a broad general proposition. *Id.*; *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). Such specificity is especially important in the Fourth Amendment context, where the

Supreme Court had recognized that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. at 12 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

*B. Carlos' undisputed conduct established that the Officers could reasonably believe he was verbally and physically resisting arrest.*

In the district court, Carlos consistently argued that no force was necessary because he was a "compliant, non-resisting suspect that present[ed] no immediate threat of harm." ROA.12024; *see also* ROA.10600-10601. But that argument ignores that the Court must measure the force used under the facts as a reasonable officer *would perceive them*, not necessarily against the historical facts. *Griggs*, 841 F.3d at 313. Regardless of whether Carlos (or the jury) believed he was *actually* complying, it is the Officers' perspectives that control.

The parties stipulated that Gonzalez-Rodriguez—the suspect the Officers believed they were apprehending—had a warrant for his arrest for felony assault/family violence and had fled his vehicle on foot following pursuit by Officer Ybarra. ROA.9403-9404. It is also undisputed that based on the suspect's background, he was likely to be armed and violent. ROA.12267 (Doe: "And [Detective Doe 2]'s like, we got to get him stopped. He's going to fight. He's going to run, and he's armed"). Chavez and Gonzalez

also had experience with the HIDTA task force and were aware that the suspects they deal with are very dangerous, high-risk, violent, and have guns. ROA.12315-12316. Against that backdrop, the Officers could have perceived that to accomplish their objective—Gonzalez-Rodriguez's arrest—resistance was probable and force might be necessary. ROA.11693, 12267, 12320.

Carlos' undisputed conduct at the point of Doe's initial contact confirmed that perception. Doe testified that at the time he came up on Carlos, Carlos was ducking into the wood line, looking back and forth, with his hands in front of him. ROA.11734. Doe did not want the suspect to run anymore because the objective was to place him in custody. ROA.11693, 11734. When he exited his vehicle to confront Carlos, Doe yelled: "Police." "Let me see your hands. Get on the ground." ROA.11741. Carlos did not comply. ROA.11741-11742, 11760. By his own admission, despite hearing three commands to get on the ground—two from Doe and one from Gonzalez and Chavez—Carlos was slightly crouching with his hands in front of him. ROA.11570-11572, 11609.

At that point, Doe testified that he took Carlos to the ground because the suspect he believed he was apprehending was a fleeing felon:

> Q. All right. And so at that point, there was no need for you to put hands on him if he knew there were officers there and he was obeying your commands, agree?

A. He was not obeying my commands, sir.

Q. See, and I understand that's your—that's your perception of it.

But my question is, if he was obeying your commands and he has testified he was aware that there was a police officer presence there, there would have been no need for you to put hands on him.

Do you agree with that?

A. The fact that he was a fleeing felon and was a danger, I had to put him on the ground to prevent him from running. That was—that was my objective at the time.

ROA.11760-11761. Considering the danger posed by the suspect Doe thought he was apprehending and Carlos' conduct when he encountered Doe, Doe was justified in using force to ensure compliance with his repeated instruction to get on the ground.[3] *Craig v. Martin*, 49 F.4th 404, 412 (5th Cir. 2022) (physical force may be necessary to ensure compliance when a suspect refuses to comply with instructions).

As Doe was taking Carlos to the ground, Chavez and Gonzalez arrived to assist. Chavez testified that by the time he reached Carlos, Carlos was lying flat on the ground with his hands pinned beneath his body. ROA.11791.

[3] The parties dispute how Doe took Carlos to the ground. Carlos testified that Doe hit him in the head with an object. ROA.11572-11573. Doe denied hitting Carlos with any object but testified that Carlos had a black object in his hands, which Doe tried to kick away, but missed, lost his balance, and they both went to the ground. ROA.11751. Doe testified that he applied a palm strike on Carlos' right shoulder to ensure he was on the ground. ROA.11753-11754.

Chavez went straight for Carlos' right arm and tried to pull it behind his back, telling him to put his hands behind his back, but Carlos "tense[d] up and he pull[ed] his arm towards the ground, away from me." ROA.11791. When Carlos would not comply, Chavez testified:

> Q. When you've indicated to the jury that Roger wouldn't comply, what did you do next?
>
> A. I kept, you know, commands, put his hands behind his back.
>
> Q. And what did you do after that?
>
> A. I pulled on his arm. I pulled on his arm again. He tensed up, and he kept pulling towards the ground, away from me.

ROA.11792.

Chavez stated that in his training and experience, the longer a struggle goes, the more dangerous it is for both suspect and officers. "So I knew now I had to strike him to get him to stop resisting and to put his hands behind his back, so I punched him once in the face." ROA.11792 After the initial compliance strike, Chavez stopped and assessed, pulled Carlos' arm again and told him to put his hands behind his back. ROA.11793. Carlos again refused and "even tensed up harder and pulled his hands—his shoulder towards the ground." ROA.11793 So again, to gain compliance, Chavez punched Carlos twice on the left side of his face. ROA.11793. At this point,

Carlos stopped resisting and Chavez and Gonzalez were able to put his hands behind his back.[4] ROA.11795.

Chavez and Gonzalez testified that after Doe took Carlos to the ground, Carlos' hands were underneath him. 11791, 11830. Contrary to that testimony, Carlos testified, "I put my hands out to the sides." ROA.11573. But Carlos failed to dispute that he did not offer his hands to be cuffed until *after* administration of compliance strikes, nor did he deny that he resisted Chavez's and Gonzalez's attempts to get control of his arms by tensing them. Instead, Carlos simply claimed he did not remember officers grabbing his arms. ROA.11578. Under these circumstances, even Carlos' expert, Ron Martinelli, admitted force is permissible to gain control of a suspect:

> If the officer believes that the person is voluntarily using tensive resistance to keep their arms from being pulled out and controlled by the officer, they can use certain levels of force to create pain compliance to literally force the subject to remove his arms so that they can control him.

ROA.12000.

Carlos' own testimony presents a narrative of resistance, not compliance. When questioned regarding whether he complied with

[4] Gonzalez also witnessed Carlos' hands were underneath his body and experienced similar resistance trying to get Carlos' left arm behind him, and like Chavez determined that compliance strikes were necessary to get Carlos to comply. ROA.11827, 11850. Gonzalez—who the jury exonerated of using excessive force—initially applied two closed-fist strikes to Carlos' torso, reassessed, pulled Carlos' arm again, hit Carlos again, and was finally able to obtain Carlos' compliance. ROA.11828.

commands to "get on the ground," Carlos acknowledged that he did not immediately get on the ground. Instead, he questioned the Officers' authority:

> Q. Once [Doe's] truck stopped, tell me what he did next.
>
> A. Well, he came to a stop, threw his door open, and as soon as he threw his door open, he said, "Get on the ground."
>
> And at that point, I was just kind of dumbfounded. I was like "What's going on? You know, this is my property. What's going on?"

ROA.11570-11571.

> Q. And then is it your testimony that he approached you and told you to get on the ground, correct?
>
> A. Well, his initial—when he first told me to get on the ground is right when he opened the door, and then as he came around the door, he told me again, "Get on the ground."
>
> Q. Okay. And at that point, tell the jury what you did.
>
> A. At that point, I—like I said, I just—you know, I was confused. I didn't know what was going on. So I put my hands in front of me like this (indicating), and I just kind of started crouching down.
>
> And as I was going to the ground, I heard to my left, "Get on the ground." And I turned my head, and I saw the other two officers running at me from the left. And so by the time I turned my head back around, you know, looking at the ground, that's when I was hit [by Doe].

ROA.11572.

Sergeant Larry Blackburn—who conducted the Internal Affairs investigation of Carlos' complaint—testified that he did not feel the Officers used excessive force against Carlos, nor did he believe that they violated SAPD procedure. ROA.38163 Instead, as Blackburn explained, while Carlos may have believed he was not resisting, his conduct as he described it to Blackburn would be construed by reasonable officers as resisting arrest:

> Q. —tell me what Roger told you that led you to believe that his actions might have contributed to this incident.
>
> A. Because he said he was defending himself. They was—he said he was hit and he defended himself and his—what he's doing—it would be hard for somebody not to defend themself when they're being hit by the officers, but the officers are going to construe that as resisting.
>
> A lot of complainants we would get at internal affairs don't really understand what resisting is, and they are—they are resisting inadvertently. They don't know they're resisting, but they are.

ROA.38159.[5]

---

[5] Throughout this litigation, Carlos has relied on the Officers' agreement to a 5-day suspension for violation of SAPD policy as an admission of their guilt. But violation of police regulations is immaterial to the question of whether Carlos established a federal constitutional violation by either defendant. *Herrera v. Aguilar*, No. SA-10-CV-00569-DAE, 2013 WL 5354518, at *1 (W.D. Tex. Sept. 24, 2013). *See also* ROA.12176 (Ortiz testifying: "you can violate a policy and procedure without violating the law."). As Chief William McManus explained, SAPD's excessive force policy is stricter than the federal constitutional standard under *Graham v. Connor*. ROA.11880-11881. And the jury was specifically instructed that "a violation of internal police department policy does not constitute in and of itself an unreasonable use of force under the Fourth Amendment." ROA.9406.

*C. Clearly established law entitled the Officers to use "measured and ascending" actions in response to Carlos' resistance.*

As of May 20, 2014, the Officers' training and controlling precedent clearly established that "measured and ascending" actions that correspond to a suspect's escalating verbal and physical resistance are reasonable. *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (citing *Galvan v. City of San Antonio*, 435 Fed. App'x. 309, 311 (5th Cir. 2010) (explaining that the use of force was reasonable when it involved "measured and ascending responses" to a plaintiff's noncompliance).

Police witnesses and the Officers' expert echoed that precedent:

- **Sergeant Mark Delgado**: "Q. Did it surprise you that the detective made contact with Mr. Carlos to arrest him rather than wait for the two uniformed SWAT officers to make the contact? A. No. No, sir. That doesn't surprise me. Any officer in that situation under the circumstances and given the information that was given on who the target was would have done the same thing." ROA.12045-12046.

- **Officer Rene Salas**: "Q. In the programs that you have taught, did you ever teach officers that they had some responsibility, if they thought they had that man [referring to Josue Gonzalez-Rodriguez], that they had to slow down and not get close to him, as opposed to getting their hands on him as quickly as they could? A. We would teach to—yes, not try to delay the arrests. Unfortunately, sometimes delaying the arrests can make the situation dangerous for not only the individual that's about to be arrested, but also the officers as well. So we would tell them, if they can do it in a quick safe manner. But delaying it can definitely be bad on everyone's part." ROA.12064-12065.

- **Officer Rene Salas**: "Q. Under what circumstances are fist punches to the face authorized for police officers? A. When we're trying to subdue somebody, they are taught strikes. We don't teach them, well, when you're on someone, you can only punch them twice, or you can only punch them once. They're taught that, again, we have to achieve a lawful, objective goal, which is to put them in handcuffs." ROA.12070.

- **Officer Juan Mandujano**: "Q. When an officer gives commands, what do you teach them, in the tactical courses, that they are supposed to be looking for in order to to decide if they go to the next level? A. Compliance with those commands. Q. What kind of compliance? Maybe compliance? A. Not only verbal, but mannerisms, giving the hands, showing the hands, putting them in a position that I need them to be for me to gain control and apply the handcuffs. Q. What do you teach them about—if they don't see those things? A. If they don't see the compliance, well, again, one option is to continue applying whatever technique they're trying. But if that's not working, our policy is, you can move up the force continuum and apply the higher level of force to gain that compliance. If this is not working, we move on to something else." ROA.12099-12100.

- **Craig Miller**: "Q. And I believe you've already said that officers in these other programs are, in fact, taught that if they have used their physical strength to get an arm into handcuffs and cannot, that they can use a pain strike? A. That's correct. The force continuum allows that." ROA.12146.

Close review of the record demonstrates that Carlos' resistance to arrest is undisputed. Carlos *admitted* that rather than immediately "getting on the ground" as the Officers directed, he questioned the Officers' right to be on "his" property. ROA.11608. Then once on the ground, Carlos tensed his

arms, resisting the Officers' efforts to handcuff him. ROA.11791-11793. These undisputed facts, together with the Officers' reasonable belief that they were apprehending a dangerous felon who had led police on a high-speed chase, justified measured and ascending force in order to arrest Carlos.

*D. Carlos failed to cite relevant precedent placing the Officers' purported Constitutional violation beyond debate.*

Throughout this litigation, Carlos has insisted that he did not resist *at all*, and thus, *no* force was necessary. Consequently, the precedent he relies on merely states the general proposition that clearly established law makes essentially any use of force excessive when a suspect is not fleeing or resisting arrest. *See, e.g.,* ROA.10601 (citing *Spiller v. Harris Cnty., Tex.*, 113 F.4th 573, 577 (5th Cir. 2024); *Sam v Richard*, 887 F.3d 710, 714 (5th Cir. 2018); *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 727 (5th Cir. 2018); *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015), *cert. denied*, 580 U.S. 998 (2016)).[6] In light of the uncontroverted evidence discussed above from which reasonable officers could perceive that Carlos was resisting arrest, the cases he relies on are inapt.

---

[6] In addition to being factually distinguishable, the cited cases are irrelevant because they all post-date the incident involved in this case. *See Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (the reasonableness of an officer's conduct is judged against the backdrop of the law at the time of the conduct).

Indeed, precedent post-dating Carlos' arrest demonstrates that no clearly established law prohibited the measures the Officers took to effectuate the arrest. *Tucker v. City of Shreveport* dealt with a plaintiff (Tucker) pulled over for a broken brake light who much like Carlos, was initially forced to the ground then subjected to compliance strikes in order to secure him with handcuffs. 998 F.3d 165 (reversing *Tucker v. City of Shreveport*, No. 17-1485, 2019 WL 961993 (W.D. La. Feb. 27, 2019) (referred to as D.Ct.Op.)). Rather than immediately stop, Tucker continued driving for approximately two minutes, leading the officer into a neighborhood considered to be a "high-crime area." *Tucker,* 998 F.3d at 178.

Once stopped, an officer asked Tucker to exit the car, searched Tucker, and found a small knife. *See* D.Ct.Op. at *1. Although Tucker was agitated about being the subject of police attention, he was largely compliant. Subsequently, two other officers arrived and Tucker was forcefully taken to the ground. The district court found the takedown excessive and violative of clearly established law, but this Court disagreed, determining that *at a minimum*, reasonable officers would debate whether the takedown was excessive:

> For instance, the district court, endeavoring to construe disputed facts in Tucker's favor, inferred that, prior to the takedown, Tucker had complied with Cisco's order to put his hands behind his back and did not "jerk" his arm away from Cisco and

> McIntire. On the other hand, the district court likewise observed, the video footage undisputedly reflects slight movement in Tucker's left arm as McIntire grabbed it. And both Cisco and McIntire testified, without contradiction, that they had felt tension in Tucker's arms.

*Tucker*, 998 F.3d at 178.

Tucker's perceived resistance, together with his refusal to immediately stop but continuing to drive into a known "high-crime area" led this Court to hold that given the circumstances, "we are convinced that the district court erred in its qualified immunity assessment of the 'takedown' aspect of Tucker's claim. Specifically, we are not convinced that applicable jurisprudence provided fair warning to [the officers] . . . that pulling Tucker to the ground under the circumstances and in the manner that occurred here would necessarily violate his Fourth Amendment rights against unreasonable seizure." *Id.* at 180. *See also Carroll*, 800 F.3d at 174-75 ("Testimony at trial and case law establish that officers are trained to use nonlethal force to gain compliance if a subject actively resists arrest and does not comply with verbal task directions to get on the ground.").

The Court similarly disagreed that officers were not entitled to qualified immunity for the force they used once Tucker was on the ground. *Tucker*, 998 F.3d at 184. Once officers took Tucker to the ground, he was subjected to punches from four officers and at least three kicks from one.

*Tucker*, 998 F.3d at 181. Nevertheless, the Court determined the officers were entitled to qualified immunity:

> Most important to this conclusion is Tucker's failure to dispute the Defendant Officer's testimony that Tucker was pulling his arms from their grasp and failing to put them behind his back. On this point, McIntire testified that Tucker had freed his arms from the officers' grasps and, whilst on the ground, had them underneath his body, not giving his hands to the officers for cuffing.

*Tucker*, 998 F.3d at 184.

The facts here are not dissimilar. Chavez and Doe believed they were pursuing—and had identified—a dangerous felon who was likely armed. Although Carlos did not actively flee when Doe first encountered him, Doe's training led him reasonably to believe that Carlos might try to run:

> A. He's looking—he's looking at the—at the patrol unit. Then he's looking at me. He's looking at the patrol and he's looking at me. Usually when people do that, whenever they're doing that, they're like "All right, man. Like I'm kind of trapped." So in my opinion I thought he was going to run.

ROA.12274. Based on that reasonable perception, Doe (and Chavez assisting) were justified in forcefully bringing Carlos to the ground when he did not comply with at least three commands to do so. ROA.11742, 11788-11790.

Furthermore, once Carlos was on the ground, the compliance strikes the Officers used—even as Carlos described—were no more than Tucker

endured. Yet the Court found it critical that Tucker—like Carlos—had tension in his arms and thus from the officers' perspective was resisting arrest. ROA.11791-11793, 11855, 12324, 12359, 12398-12399.

Although the facts in this case and *Tucker* are not identical, this Court's reflections in *Tucker* ring equally true here:

> In hindsight, knowing as we do that Tucker was unarmed, was not in possession of drugs or other contraband, and was pulled over for a non-violent traffic offense, it is regrettable that Tucker suffered *any* injury or indignity at the hands of law enforcement officers, no matter how slight or temporary. And, of course, one might logically wonder if injury could have been avoided, or at least lessened, if one of the five persons involved had reacted differently.
>
> * * * * *
>
> [O]ne might argue that, at some point in the maelstrom, considering that Tucker was on the ground and surrounded by three, and then with Kolb's arrival, four officers, including one of substantially superior height and brawn . . . one of the officers could, or should, have called for a pause—that is, for the officers to cease any efforts to physically restrain Tucker—in order to give Tucker an opportunity, void of confusion and in a moment of calm, to make the logical decision to simply cooperate in Cisco's efforts to handcuff him, despite believing handcuffs to be unwarranted.
>
> * * * * *
>
> [C]learly established law, as of November 30, 2016, certainly did not impose such a requirement. Nor, on the instant facts, viewed from the perspective of the officers, as the events occurred, *not* from hindsight, is this situation one in which it should have been obvious to Defendant Officers, even in the absence of pre-existing, factually similar case law, that the force being utilized was excessive.

*Tucker*, 998 F.3d at 185 (emphasis in original).

More recently, in *Salazar v. Molina*, 37 F.4th 278 (5th Cir. 2022), Salazar led police on a high-speed chase through a residential neighborhood. Eventually, two vehicles pulled in front of Salazar's path blocking his way forward. *Id.* at 280. Salazar stopped his vehicle, got out, dropped to his knees next to the car, and raised his hands, He then lay on the ground with arms above his head and legs crossed. *Id.*

Just as Salazar finished lowering himself to the ground, Deputy Molina brought his patrol car to a stop behind Salazar's vehicle, exited his vehicle, and ran toward Salazar. Salazar remained on the ground but uncrossed his legs two seconds before Molina got to him. Upon reaching Salazar, Molina fired his taser at Salazar's back. Although Molina claimed only to have deployed his taser once, Salazar claimed Molina kept his finger on the taser and triggered a second cycle.

Salazar sued Molina alleging excessive force and Molina, in turn, moved for summary judgment based on qualified immunity. *Id.* at 281. The district court denied Molina's motion, but on appeal, this Court reversed, noting that what preceded the surrender matters:

> A reasonable officer will have little cause to doubt the apparent surrender of a compliant suspect who has not engaged in dangerous or evasive behavior. But when a suspect has put officers and bystanders in harm's way to try to evade capture, it is reasonable for officers to question whether the now-cornered suspect's purported surrender is a ploy. That's especially true

> when a suspect is unrestrained, in close proximity to the officers, and potentially in possession of a weapon.

*Id.* at 282.

The Court also rejected Salazar's argument that Molina could no longer reasonably fear for his safety and justifiably use any force once Salazar purported to surrender. "To the contrary, we've repeatedly refused to hold that '*any* application of force to a compliant arrestee is *per se* unreasonable.'" *Id.* (quoting *Escobar v. Montee*, 895 F.3d 387, 394-95 (5th Cir. 2018) (emphasis in original)). "[A] suspect cannot refuse to surrender and instead lead police on a dangerous hot pursuit—and then turn around, appear to surrender, and receive the same Fourth Amendment protection from intermediate force he would have received had he promptly surrendered in the first place." *Id.* at 282-83.

As in *Salazar*, Doe and Chavez were faced with a suspect they reasonably believed had led other officers on a high-speed chase and then bailed on foot in a further attempt to evade arrest. *Salazar* makes clear that those circumstances distinguish this case from Carlos' more general authority holding that any force is unnecessary against a suspect who is neither fleeing nor resisting.

As the Magistrate Judge described, what happened to Carlos on May 20, 2014, resulted from "a stroke of terrible misfortune"—being mistakenly

(but reasonably) identified as a fleeing violent felon wanted on a family violence warrant. ROA.6573-6574. But in evaluating a qualified immunity defense, the Court must consider only the facts that were knowable to the defendant officers, not based on 20/20 vision of hindsight. *White v. Pauly*, 580 U.S. 73, 76-77 (2017); *Graham*, 490 U.S. at 396. As discussed above, based on what the Officers knew at the time they first encountered Carlos, as well as his perceived conduct following that first encounter, reasonable force was necessary to place him under arrest. Because Carlos has failed to produce *any* precedent, much less clearly established law, demonstrating no reasonable officer could have acted as either Doe or Chavez did under the circumstances, the Officers were entitled to judgment as a matter of law based on qualified immunity.

## II. The district court, based on the jury's verdict, awarded excessive damages for past pain and suffering and past and future mental anguish.

The jury found that Carlos sustained $2,000,000 in past physical pain and $2,000,000 in past mental anguish resulting from the Officers' use of excessive force. ROA.10788. But the jury assessed only $10,000 in past medical damages, $10,000 in past impairment, $20,000 in past lost earning capacity, and $10,000 in past disfigurement. ROA.19789-10790. The jury also found that Carlos should be awarded $3,000,000.00 for mental anguish

in the future although it found he sustained $0.00 in future lost earning capacity, future physical impairment, future disfigurement, and future medical expenses. ROA.10788-10790. The district court instructed the jury to not compromise, trade or bargain with their verdict and only award damages that were proximately caused by the alleged excessive use of force by the Officers.

When the jury determined that the Officers caused only $10,000 in past medical costs and no future medical costs or other future damages (except mental anguish) it necessarily determined that the Officers' conduct did not cause Carlos' paralysis. Furthermore, as discussed below, Carlos offered no evidence that he would incur future mental anguish arising solely from the encounter with the Officers or the minimal injuries caused by that encounter.

Instead, his testimony focused on future mental anguish ***solely due to*** his paralysis:

> Q. Over the—over the last nine years [after surgery], Roger, what would you tell the members of the jury about your pain level on a daily basis and what you have to go through and how you alleviate that?
>
> A. So from the very first day that I woke up after my surgery, I can honestly say that there has not been a moment that I have not been in pain.

ROA.13025.

> Q. Roger . . . before November 3rd of 2015, you were able-bodied. How do you feel—when you're out and about in your wheelchair, how do you feel perceived by people? What is your thought process?
>
> * * * * *
>
> A. You know, I'm a shell of a man that I used to be.

ROA.13047-13048.

> Q. While you were at [the Texas Institute of Research and Rehabilitation post-surgery], give the members of the jury what your mood was like. What did you feel?
>
> A. Just despair.
>
> * * * * *
>
> I just remember asking my brother, Bob, what am I going to do? What the hell am I going to do? I can't even move my arms. . . . . It's so scary. You don't know what your life is going to turn out to be. Your life is over. At that point I would have probably rather been dead. That's how bad it was.

ROA.12978. Based on the evidence and the balance of the jury's verdict, the damages awarded to Carlos for past physical pain and mental anguish and for future mental anguish are excessive. The district court denied the Officers' motion for new trial and for remittitur of these damages of elements. ROA.11195-11199.

Federal Rule of Civil Procedure 59 provides that the "court may, on motion, grant a new trial on all or some of the issues—and to any party . . .

after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59. A court may grant a new trial if the damages awarded were excessive. *International Ins. v. RSR Corp.,* 426 F.3d 281, 300 (5th Cir. 2005); *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 613 (5th Cir. 1985). In addition, a court may enter remittitur when "left with the perception that the verdict is clearly excessive." *Thomas v. Texas Dep't of Crim. Just.*, 297 F.3d 361, 368 (5th Cir. 2002).

The trial court has discretion to order a new trial or condition the new trial on the verdict winner's refusal to accept a remittitur when the verdict is against the great weight of the evidence or when the award is "entirely disproportionate to the injury sustained." *Id.* at 373; *see also Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996); *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983). The size of the remittitur is determined in accord with the "maximum recovery rule," under which the verdict must be reduced to the maximum amount the jury could properly have awarded. *See Naquin v. Elevating Boats, L.L.C.,* 744 F.3d 927, 940 n. 67 (5th Cir. 2014). This Court reviews decisions on motions for new trial and remittitur for abuse of discretion. *Longoria v. Hunter Express, Ltd.*, 932 F.3d 364 (5th Cir. 2019).

A strong presumption favors a jury's damages assessment. *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 298 (5th Cir. 2024), *cert. denied*, 145 S.Ct. 168 (2024). However, compensatory damages for emotional distress and other intangible injuries are not presumed from the mere violation of statutory or constitutional rights, but require specific individualized proof, including how the plaintiff was personally affected by the defendants' conduct and the extent of the harm. *Miniex v. Hous. Housing Auth.,* 400 F.Supp.3d 620, 658 (S.D. Tex. 2019) (citing *DeCorte v. Jordan*, 497 F.3d 433, 442 (5th Cir. 2007)). *See also Carey v. Piphus*, 435 U.S. 247, 264 (1978) (mental and emotional distress caused by denial of procedural due process is compensable under § 1983, but not without proof that such injury actually was caused). When the Court is left with the perception that the verdict is clearly excessive, deference must be abandoned. *Harris*, 92 F.4th at 298; *Lebron v. U.S.*, 279 F.3d 321, 325 (5th Cir. 2002).

Generally, courts in this Circuit use the maximum recovery rule to determine whether damages are excessive. *Harris*, 92 F.4th at 299. Under the maximum recovery rule, the Court should not reduce damages where the amount awarded is not disproportionate to at least one factually similar case from the relevant jurisdiction—in this case, the Fifth Circuit. *Lebron*, 279 F.3d at 325. *See also Longoria,* 932 F.3d at 365. The rule allows some leeway,

so it permits a verdict at 150% of the highest inflation-adjusted recovery in an analogous, published decision. *Longoria*, 932 F.3d at 365.

*A. Past pain and suffering*

The jury found that Carlos sustained $2,000,000 in past physical pain resulting from the Officers' use of excessive force. ROA.10788. Because the jury's verdict reflects it rejected Carlos' claim that the Officers' conduct caused his paralysis, evidence of his physical pain arising from his surgery cannot be considered. Consequently, the jury's assessment of $2,000,000 for past physical pain is excessive considering the evidence at trial and awards in factually similar cases.

Setting aside evidence regarding the effect of Carlos' paralysis, what remains is his testimony that Doe hit him across the head with an object and knocked him to the ground. ROA.12939. According to Carlos, the Officers "kept on hitting" him in the head and in the face after he was on the ground. ROA.12940. Carlos also claimed one officer put his knee on Carlos' head, and another kicked him "in the eye or right above the eye." ROA.12941-12942. Carlos testified that Doe "cross-faced" him and "started elbowing" him in the face, then grabbed the back of Carlos' head and "just started slamming my face into the ground." ROA.12943.

As a result of the Officers' conduct, Carlos broke a tooth and sustained lacerations, abrasions, contusions, and swelling to his face. ROA.12943, 13422, 25509. He declined EMS transportation to the hospital but instead drove himself to Christus Santa Rosa. ROA.12945-12946. Santa Rosa staff closed the gash above Carlos' eye with Dermabond, performed x-rays of his head and face, and prescribed hydrocodone for pain. ROA.12949.

For the next several months, Carlos sought treatment for occipital headaches and neck pain, but his primary care physician nevertheless gave him a note to return to work without restrictions on May 23, 2014—three days after the incident. ROA.13880. Carlos took a leave of absence from work for a previously reported work-related shoulder injury on July 1, 2014, but returned to work full time on November 7, 2014. ROA.13896-13897, 13901. Carlos continued to work until November 2015, shortly before his scheduled surgery. ROA.13905.

For past physical pain, the jury assessed damages of $2,000,000, more than 66 times Carlos' purported tangible damages.[7] Cases involving § 1983 claims with similar facts demonstrate that the jury's award was clearly excessive and entirely disproportionate to the injury sustained.

[7] The jury found that Carlos sustained $20,000 in past lost earning capacity and $10,000 in past medical care expenses. ROA.10789-10790.

For instance, in *Keyes v. Lauga*, 635 F.2d 330 (5th Cir. 1981), officers beat plaintiff with fists and night sticks, causing plaintiff a low-grade concussion, numbness in his left thumb, bruises, continuing headaches, nightmares and nervousness. *Id.* at 336. The jury awarded $75,000 in damages. *Id.* Of that amount, $329 was for medical expenses, and the remainder for mental anguish, pain and suffering and embarrassment. *Id.* This Court concluded that the award was beyond the maximum possible recovery for the injuries suffered and remanded the case to the trial court to determine an appropriate conditional remittitur.[8] *Id.*

In *Hinshaw v. Doffer*, 785 F.2d 1260 (5th Cir. 1986), *overruled in part on other grounds, Johnson v. Morel*, 876 F.2d 477 (5th Cir. 1989), the plaintiff suffered a severe beating and remained sore for several weeks afterward. He also experienced occasional numbness in one arm up until the time of trial. *Id.* at 1270. This Court determined that the jury's award of $32,500 for pain and suffering, mental anguish, and embarrassment were supported by the evidence.[9] *Id.*

---

[8] Adjusted for inflation, the $75,000 award would be worth $271,976.72 as of November 2024. *See* CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm. Adding the additional 50% permitted under the maximum recovery rule, any award of $407,965.08 or above for combined physical pain and mental anguish would be excessive.

[9] Adjusted for inflation, the $32,500 award would be worth $94,241.93 as of November 2024. Therefore, according to this Court, $141,362.90 (150% of $94,241.93) would not be an excessive award for physical pain, mental anguish, and embarrassment combined.

The plaintiff in *Chacon v. Copeland*, 103 F.Supp.3d 827 (W.D. Tex. 2015) suffered a laceration above his eye that required stitches and remained swollen for several weeks. He also was treated for contusions and scrapes. *Id.* at 836. The court concluded that the evidence did not support the jury's $300,000 award for past physical pain and mental anguish and found that an award greater than $35,000 would be excessive.[10] *Id.* at 838.

Finally, in *Smith v. City of Seven Points, Tex.*, 608 F.Supp. 458 (E.D. Tex. 1985), officers struck plaintiff several times with a blackjack and knocked him to the ground. The plaintiff suffered a cut to his head, a serious bruise on his left cheek, and various other abrasions. *Id.* at 461. The jury awarded $150,000, but other than a $900 dental bill, damages were for humiliation, pain, and suffering. *Id.* at 464. The court concluded that $149,000 "is simply not in the universe of rational awards" based on the evidence and further held that $50,000 was the maximum possible recovery for the injuries plaintiff suffered.[11] *Id.* at 466.

These authorities demonstrate that the jury's award for past physical pain was clearly excessive, reflecting the jury's desire to punish the Officers

---

[10] Adjusted for inflation, the $35,000 award would be worth $46,670.75 as of November 2024. Therefore, consistent with *Chacon*, $70,006.13 (150% of $46,670.75) would not be an excessive award for past physical pain and mental anguish combined.

[11] Adjusted for inflation, the $50,000 award would be worth $102,910.11 as of November 2024. Therefore, under *Smith*, $154,365.17 (150% of $102,910.11) would not be an excessive award for humiliation, pain, and suffering combined.

rather than to compensate Carlos for damages resulting from their conduct. As such, the Officers request that the Court conditionally order a significant remittitur consistent with the evidence and recoveries in similar cases.

*B. Past Mental Anguish*

In addition to past physical pain, the jury determined that Carlos sustained $2,000,000 in damages for past mental anguish resulting from the Officers' conduct. ROA.10789. For the reasons discussed above, the award based on that finding was excessive and violated the maximum recovery rule.

In addition, the district court instructed the jury, consistent with the law, that:

> To recover compensatory damages for mental and emotional distress, Plaintiff must prove that he suffered a specific discernable injury with credible evidence. Hurt feelings, anger, and frustration are part of life and are not types of harm that could support a mental anguish award. Evidence of mental anguish need not be corroborated by doctors, psychologists, or other witnesses, but Plaintiff must support his claims with competent evidence of the nature, extent, and duration of the harm. Damages for mental or emotional distress must be based on the evidence at trial. They may not be based on speculation or sympathy.

ROA.10801. *See also Carey*, 435 U.S. at 264 ("although mental and emotional distress . . . is compensable under § 1983, we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was

caused"); *Thomas,* 297 F.3d at 368 (plaintiff must provide evidence of the nature and extent of emotional distress; vague allegations are insufficient).

Here, the evidence of Carlos' past mental anguish is related solely to harm resulting from his paralysis. *See, e.g.,* ROA.13025, 13948. But again, the jury's verdict reflects that it rejected Carlos' claim that the Officers' conduct caused his paralysis. Carlos presented no evidence of past mental anguish he suffered from the relatively minor injuries resulting from the Officers' conduct. Carlos' sister Christina Roberson was specifically asked about whether Carlos' life, abilities or attitude was different between the incident with the officers and Carlos' surgery. She could not say that it was. ROA.13085-13086, 13100-13101.

Consequently, the Court should vacate the jury's award of $2,000,000 or at most, conditionally order remittitur to no more than a nominal sum. *See Longoria*, 932 F.3d at 368 (vacating award of future mental anguish where plaintiff cleared to work following surgery and three-month recovery period after car accident); *Miniex*, 400 F.Supp.3d at 662 (amending $215,000 award of future mental anguish downward to nominal sum of $100 where plaintiff's testimony did not speak to the nature, extent, or duration of her claim of emotional harm).[12]

---

[12] Although the cited cases involve future mental anguish in cases not brought under § 1983, the standard of proof for recovering mental anguish is the same. Furthermore, this

### *C. Future Mental Anguish*

The jury found the incident in question caused no future impairment, future lost earnings, future pain, or future medical damages. Nevertheless, they awarded $3,000,000 in future mental anguish. The jury's verdict of significant mental anguish is clearly excessive where there was no finding of future impairment, disability or medical cost.[13] ROA.10789-10790. And where the Officers' conduct caused minimal bodily injury in the past, no future impairment, no future lost earnings, no future pain and suffering, and no need for future treatment it is unclear how the jury could arrive at a significant sum for future mental anguish. In fact, there was ***no testimony*** or documentation that Carlos suffered any mental anguish, pain or suffering arising from his encounter with the Officers. The only evidence consistent with mental anguish was concerning the lifelong effects of the tetraplegia, which the Officers argued was solely caused by surgical error. ROA.13025, 13949. The Officers' expert testified the surgery was necessary because of degenerative changes, not because of the incident of arrest. ROA.13776,

Court has noted that remitting emotional distress damages may be appropriate even without the guidance of an independent award for past mental anguish. *See Thomas*, 297 F.3d at 371, n. 12.

[13] As with past pain and suffering and mental anguish, the damages awarded for future mental anguish also violate the maximum recovery rule for the reasons discussed above.

13790-13791. The jury evidently agreed with the Officers in finding no future medical damages were caused by the incident itself.[14]

This Court has determined that the proof necessary to support a mental anguish damage award must be a "specific discernable injury to the claimant's emotional state," including evidence of the nature and extent of the harm. Hurt feelings, anger and frustration are not the types of harm that can support a mental anguish claim. *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 718 (5th Cir. 1998) (quoting *Carey*, 435 U.S. at 264). In some circumstances, a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress based on a constitutional violation. The testimony, however, must establish that the plaintiff suffered demonstrable emotional distress; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a Constitutional violation occurred supports an award of compensatory damages. *Chacon,* 103 F.Supp. 3d at 837; *see also Miniex,* 400 F.Supp.3d at 658 (citing *DeCorte,* 497 F.3d at 442). *See also Carey*, 435 U.S. at 264 (mental and emotional distress caused by denial of procedural due process is

[14] The jury's finding that Carlos sustained no future pain and suffering further confirms that it rejected his theory that his encounter with the Officers caused his paralysis. *See* ROA 13025 (Carlos testifying that "from the very first day that I woke up after my surgery, I can honestly say that there has not been a moment that I have not been in pain").

compensable under § 1983, but not without proof that such injury actually was caused).

In this case, there simply was no testimony of any emotional harm resulting from the incident with the Officers themselves. Carlos did not testify to any ongoing stigma, embarrassment, loss of sleep, anxiety around officers, depression or marital strain resulting from *the incident*. On the other hand, as discussed above, Carlos' sister denied knowing of any change in her brother's life or activities after the incident and before his surgery that paralyzed him. In fact, he maintained good relationships with friends from El Paso and neighbors who are law enforcement. ROA.13017, 13040, 13049. There is no evidence to support the jury's award of an excessive amount of future mental anguish damages from the incident with the officers and the Court should consider a significant conditional remittitur.

## III. The district court abused its discretion in awarding prejudgment interest on intangible damages.

The district court awarded $2,489,757.39 in prejudgment interest in this case, assessing prejudgment interest on *all* past damages the jury found Carlos suffered. ROA.10835. State law governs the *calculation* of prejudgment interest in § 1983 cases. *Pressey v. Patterson*, 898 F.2d 1018, 1026 (5th Cir. 1990). But federal law determines the *availability* of prejudgment interest in a claim arising under federal law. *San Jacinto Sav.*

*v. Kacal*, No. 92-1833, 1993 WL 455886, at *2 (5th Cir. Oct. 27, 1993) (unpublished) (citing *Parson v. Kaiser Aluminum & Chem. Corp.*, 727 F.2d 473 (5th Cir. 1984)). And in this Court, the decision to award prejudgment interest in a § 1983 action is within the district court's discretion. *Hale v. Fish*, 899 F.2d 390, 404 (5th Cir. 1990) (in § 1983 actions, the fate of prejudgment interest is in the hands of the district court).

In his Motion to Enter Judgment, Carlos argued a strong presumption favors awarding prejudgment interest in all but exceptional circumstances, and that prejudgment interest should apply to all past injuries, including past emotional injuries. ROA.10804-10805. But none of the cases Carlos cited apply this "strong presumption" to a § 1983 claim. *See Thomas,* 297 F.3d 361 (5th Cir. 2002) (applying rule to Title VII case); *U.S. v. Ocean Bulk Ships, Inc.*, 248 F.3d 331 (5th Cir. 2001) (case involving maritime law); *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048 (5th Cir. 1996) (suit to recover economic damages under an insurance policy); *Carter v. Transp. Workers Union of Am.*, 644 F.Supp.3d 315 (N.D. Tex. 2022) (backpay award under Title VII); *Wesley v. Yellow Transp. Inc.*, Nos. 3:05-CV-2266-D, 3:05-CV-2271-D, 2010 WL 3606095 (N.D. Tex. Sept. 16, 2010) (Title VII hostile work environment claim).

In fact, in the only case Carlos cited involving a § 1983 claim, this Court *rejected* the plaintiff's claim that the district court abused its discretion in denying him prejudgment interest:

> Although state law governs the calculation of prejudgment interest in § 1983 suits, the decision to award prejudgment interest is within the trial court's discretion. [Plaintiff] has not made a showing that the district court abused its "authority to fashion relief" by denying prejudgment interest.

*Sawyer v. Hickey*, 68 F.3d 472 (5th Cir. Sept. 27, 1995) (unpublished). And unlike the cases Carlos cites, this Court and district courts within the Fifth Circuit consider awards of prejudgment interest on intangible losses such as physical pain and mental anguish improper. *See Hale,* 899 F.2d at 404 (citing with approval *Blackburn v. Snow*, 771 F.2d 556, 573 (1st Cir. 1985)), holding that in a § 1983 action prejudgment interest is improper as to compensatory awards for intangible losses); *Rodrigue v. Morehouse Detention Ctr.*, No. 09-985, 2014 WL 2879751, at *3 (W.D. La. June 23, 2014) (stating that in § 1983 action, prejudgment interest was inappropriate on award for pain and suffering; award itself was sufficient to compensate plaintiff at the time of judgment and no adjustment for the use of money was necessary); *Shepherd v. Dall. Cnty., Tex.*, No. 3:05-CV-1442-D, 2008 WL 3931164, at *1 (N.D. Tex. Aug. 26, 2008) (denying request for prejudgment

interest, noting that court does not have to award prejudgment interest in § 1983 claims and such an award would be improper on intangible losses).

Here, the jury assessed $4,020,000 in intangible damages for past physical pain and mental anguish—a sum 134 times the amount it found for Carlos' tangible losses. Under the authorities cited above, it was an abuse of discretion for the district court to award prejudgment interest on those intangible damages. And because the intangible damages are so significant (and as discussed above, excessive), the district court would have been well within its discretion to deny prejudgment interest altogether.

## CONCLUSION

This Court should reverse the district court's Final Judgment to dismiss Carlos' claims against the Officers. Alternatively, the Court should conditionally grant a significant remittitur or remand the case to the district court to do so. Alternatively, the Court should amend the Final Judgment to eliminate prejudgment interest on Carlos' intangible losses.

Respectfully submitted,

DENTON NAVARRO RODRIGUEZ
BERNAL SANTEE & ZECH
A Professional Corporation
Clarissa M. Rodriguez
State Bar No. 24056222
Patrick C. Bernal
State Bar No. 02208750
Lowell F. Denton
State Bar No. 05764700
Lori W. Hanson
State Bar No. 21128500
2517 N. Main Avenue
San Antonio, Texas 78212
(210) 227-3243
(210) 225-4481 (fax)
cmrodriguez@rampagelaw.com
pbernal@rampagelaw.com
lfdenton@rampagelaw.com
lwhanson@rampagelaw.com

HOUSTON DUNN, PLLC
Nissa M. Dunn
State Bar No. 14766450
4040 Broadway St., Suite 515
San Antonio, Texas 78209
(210) 775-0881
(210) 826-0075
nissa@hdappeals.com

By: */s/ Nissa M. Dunn*
Nissa M. Dunn

## CERTIFICATE OF SERVICE

I certify that on January 30, 2026, the foregoing document was served via the Court's ECF Document Filing System in compliance with Federal Rule of Appellate Procedure 25(b) and (c) on all registered counsel of record, and has been transmitted to the Clerk of Court.

*/s/ Nissa M. Dunn*
Nissa M. Dunn

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and 5th Cir. R. 32.1: this brief contains 10,729 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, version 11 in Georgia font 14-point type face.

*/s/Nissa M. Dunn*
Nissa M. Dunn